USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 5/4/2016

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
ESTHER MOTTA, et al.,

                        Plaintiffs,

                -against-

GLOBAL CONTRACT SERVICES INC., et al.,

                        Defendants.
------------------------------------------------------------ X

JOY JOSEPH, et al.,

                        Plaintiffs,

                -against-

GLOBAL CONTRACT SERVICES INC., et al.,

                        Defendants.
------------------------------------------------------------ X

15 Civ. 8555 (LGS)

15 Civ. 8892 (LGS)

**OPINION AND ORDER**

LORNA G. SCHOFIELD, District Judge:

       Plaintiffs, current and former telephone call center representatives of Global Contract Services Inc. ("GCS"), filed two lawsuits against GCS, GCS Supervisor Sean Worme, the New York City Transit Authority ("NYCTA") and the Metropolitan Transportation Authority ("MTA") for Defendants' alleged employment discrimination, sexual harassment, and retaliation. By Opinion and Order dated April 21, 2016, the motion to dismiss filed by the NYCTA and the MTA was granted, dismissing all claims against those entities. *Motta v. Glob. Contract Servs. Inc.*, No. 15 Civ. 8555, 2016 WL 1611489 (S.D.N.Y. Apr. 21, 2016). Before the Court is GCS's separate motion to dismiss, filed in both actions pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the motion is GRANTED as to the claims in the *Motta* action, and DENIED as to the claims in the *Joseph* action.

**I.     BACKGROUND**

Familiarity with the facts of the case is assumed.  *See id.* at *1.

Plaintiffs assert various claims against GCS in both cases.  The *Motta* Complaint asserts claims against GCS for unlawful discrimination based on an employee's race, sex or national origin under section 296(1)(a) of the New York State Human Rights Law, N.Y. Exec. Law § 290 et seq. ("NYSHRL"), and section 8-107(a) of the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 et seq. ("NYCHRL").  The discrimination claims arise from GCS's alleged practices of paying employees of an Access-A-Ride Call Center (the "Call Center") far below the industry standard and less than similarly situated white and male employees, and retaliating against Plaintiffs for complaining about disparate pay.  The *Motta* Complaint also asserts a breach of contract claim against GCS, which Plaintiffs claim they are able to bring as third-party beneficiaries of the contract between GCS and the NYCTA/MTA.  Both actions purport to proceed on behalf of a class of "all similarly situated persons employed by defendant GCS."

The *Joseph* Complaint asserts claims against GCS for sexual harassment, hostile work environment and retaliation under the NYSHRL and the NYCHRL.

On January 22, 2016, GCS filed the instant motion to dismiss each of the asserted claims against it in the *Motta* action (but not the *Joseph* action), and the class claims in both *Motta* and *Joseph*.

**II.    STANDARD**

"On a motion to dismiss, all factual allegations in the complaint are accepted as true and all inferences are drawn in the plaintiff's favor."  *Littlejohn v. City of New York*, 795 F.3d 297, 306 (2d Cir. 2015).  "To survive a motion to dismiss, a complaint must contain sufficient factual

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

"Documents that are attached to the complaint or incorporated in it by reference are deemed part of the pleading and may be considered." *Beauvoir v. Israel*, 794 F.3d 244, 248 n.4 (2d Cir. 2015) (internal quotation marks and alteration omitted). "'[W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint,' the court may nonetheless take the document into consideration in deciding the defendant's motion to dismiss . . . . " *Int'l Audiotext Network, Inc. v. AT&T*, 62 F.3d 69, 72 (2d Cir. 1995) (quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991)). "Insofar as the complaint relies on the terms of [an] agreement," courts "need not accept its description of those terms, but may look to the agreement itself." *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 196 (2d Cir. 2005).

### III. DISCUSSION

#### A. Discriminatory Pay

The *Motta* Complaint fails to allege a plausible claim of unlawful discrimination in GCS's pay practices under either the disparate treatment or disparate impact theories of liability.

"Disparate-treatment cases present the most easily understood type of discrimination, and occur where an employer has treated a particular person less favorably than others because of a protected trait." *Ricci v. DeStefano*, 557 U.S. 557, 577 (2009) (internal quotation marks, citations and alterations omitted). The elements of wage discrimination are (1) membership in a protected class, (2) payment "less than similarly situated non-members" of the protected class

and (3) "evidence of discriminatory animus." *Quarless v. Bronx-Lebanon Hosp. Ctr.*, 228 F. Supp. 2d 377, 383 (S.D.N.Y. 2002), *aff'd*, 75 F. App'x 846 (2d Cir. 2003); *see also Tomka v. Seiler Corp.*, 66 F.3d 1295, 1310, 1312 (2d Cir. 1995) (holding that a claim of unequal pay under the NYSHRL is "generally analyzed under the same standards used in an [Equal Pay Act] claim," but "must also produce evidence of discriminatory animus in order to make out a prima facie case"), *abrogated on other grounds by Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998).

"To prevail under the disparate impact theory of liability, a plaintiff must show that the employer uses a particular employment practice that causes a disparate impact on the basis of race, color, religion, sex, or national origin." *Chin v. Port Auth. of N.Y. & N.J.*, 685 F.3d 135, 151 (2d Cir. 2012) (internal quotation marks omitted). The elements of a disparate impact claim are (1) a specific employment practice or policy, (2) a disparity between members and non-members of a protected class and (3) "a causal relationship between the two." *Id.*; *see also Medcalf v. Thompson Hine LLP*, 84 F. Supp. 3d 313, 328 (S.D.N.Y. 2015) ("A plaintiff asserting a disparate impact claim . . . must identify a facially-neutral employment practice or policy that is causing an alleged disparity.").

"Claims brought under the NYSHRL 'are analyzed identically and the outcome of an employment discrimination claim made pursuant to the NYSHRL is the same as it is under . . . Title VII.'" *Hyek v. Field Support Servs., Inc.*, 461 F. App'x 59, 60 (2d Cir. 2012) (summary order) (quoting *Smith v. Xerox Corp.*, 196 F.3d 358, 363 n.1 (2d Cir. 1999)). In contrast, claims under the NYCHRL "must be reviewed independently and 'more liberally' than their federal and state counterparts." *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 278 (2d Cir. 2009).

The *Motta* Complaint fails to state a claim for discriminatory pay under state or city law because it does not plead a cognizable "disparity" in treatment or impact between members of a protected class and non-members.  After alleging that over 95% of the Call Center employees are black and Hispanic women and that "most" have been employed through a program designed to help those on welfare return to the workforce, the Complaint asserts that "GCS makes it a point to hire Black and Hispanic women desperate for work" so that the company could pay them lower wages.  The Complaint does not, however, allege that Plaintiffs are paid less than their white or male counterparts at the Call Center.  Instead, and without specifically identifying Plaintiffs' comparators, the Complaint asserts that the rates paid to all Call Center employees are lower than those "being paid to other Customer Information Agents and/or Reservationists in comparable positions who are white or male."

According to Plaintiffs, comparison to an industry standard -- i.e., all call center employees in New York -- is necessary because there is no simple point of comparison from which to identify similarly situated employees.  This argument is unavailing, however, as Plaintiffs' white or male co-workers at the Call Center are the most relevant comparators, and the Complaint does not allege facts that would show that white or male employees at other companies' call centers would be similarly situated to Plaintiffs.  *See, e.g.*, *Raspardo v. Carlone*, 770 F.3d 97, 126 (2d Cir. 2014) ("A similarly situated employee is one 'similarly situated in all material respects' to the plaintiff."); *McGuinness v. Lincoln Hall*, 263 F.3d 49, 54 (2d. Cir. 2001) ("[E]mployees must have a situation sufficiently similar to plaintiff's to support at least a minimal inference that the difference of treatment may be attributable to discrimination."). Similarly, the Complaint fails to plead a disparate impact claim because it does not allege that

GCS's policies affect employees of protected classes differently than they do non-members of those classes.

Without allegations of disparate treatment or impact between Plaintiffs and other Call Center employees (or others plausibly alleged to be sufficiently "similarly situated"), Plaintiffs' allegations of underpayment and substandard working conditions do not plead colorable claims of employment discrimination, even under the generous standard allowed under the NYCHRL. *See Johnson v. Andy Frain Servs., Inc.*, No. 15-1143, 2016 WL 210098, at *2 (2d Cir. Jan. 19, 2016) (summary order) (affirming dismissal of NYCHRL claim where plaintiff failed to plausibly allege connection between employer's actions and her protected characteristics); *cf. Shah v. Wilco Sys., Inc.*, 806 N.Y.S.2d 553, 559 (1st Dep't 2005) (granting summary judgment on NYCHRL disparate pay claim and holding that "where the claim is based on disparate pay, a plaintiff must first set forth a prima facie case of discrimination, i.e., that he is a member of a protected class and that he was paid less than similarly-situated non-members of the class").

GCS's motion to dismiss Plaintiff's discriminatory pay claims is therefore granted.

### B. Retaliation

The *Motta* Complaint fails to plead adequate retaliation claims under the NYSHRL and the NYCHRL.

To state a claim for retaliation, a plaintiff needs to "plead facts that would tend to show that: (1) he participated in a protected activity known to the defendant; (2) the defendant took an employment action disadvantaging him; and (3) there exists a causal connection between the protected activity and the adverse action." *Abrams v. Dep't of Pub. Safety*, 764 F.3d 244, 257 (2d Cir. 2014). "[A] plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a

reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (internal quotation marks omitted).  This standard is somewhat lower under the NYCHRL, which requires only that an employer's actions be "reasonably likely to deter a person from engaging in protected activity."  NYCHRL § 8-107(7); *see also Fincher v. Depository Tr. & Clearing Corp.*, 604 F.3d 712, 723 (2d Cir.2010) ("Under the CHRL, retaliation 'in any manner' is prohibited, and '[t]he retaliation . . . need not result in an ultimate action with respect to employment . . . or in a materially adverse change in the terms and conditions of employment.").

"[W]hile a discrimination complaint need not allege facts establishing each element of a prima facie case of discrimination to survive a motion to dismiss, it must at a minimum assert nonconclusory factual matter sufficient to nudge its claims across the line from conceivable to plausible to proceed." *EEOC v. Port Auth. of N.Y. & N.J.*, 768 F.3d 247, 254 (2d Cir. 2014) (internal quotation marks, citation and alterations omitted).  The elements of a prima facie case, however, "provide an outline of what is necessary to render [a plaintiff's] claims for relief plausible." *Sommersett v. City of New York*, No. 09 Civ. 5916, 2011 WL 2565301, at *5 (S.D.N.Y. June 28, 2011); *see also Smith v. Johnson*, No. 14 Civ. 3975, 2014 WL 5410054, at *4 (S.D.N.Y. Oct. 24, 2014), *aff'd*, No. 14-4477-CV, 2016 WL 105883 (2d Cir. Jan. 11, 2016) ("[D]espite the liberal construction accorded claims under the NYCHRL, Plaintiff must still allege enough facts to state a claim to relief under the NYCHRL that is plausible on its face.").

The allegations in the *Motta* Complaint of retaliation against Esther Motta and Sandra Lennon are insufficient to state plausible claims.  With respect to Motta, the Complaint alleges: "Ms. Motta has complained about her discriminatory pay to her supervisors at GCS.  Any time that Ms[.] Motta spoke up about the discriminatory pay, and requested a pay increase, she was

7

either disciplined for unrelated arbitrary matters or moved to less desirable assignments to keep her quiet." As to Lennon, the Complaint alleges that when she "complained about her discriminatory pay she was terminated for baseless reasons."

The Complaint alleges no details in support of these women's retaliation claims. For example, although each woman is alleged to have "complained" or "spoke[n] up about the discriminatory pay," the Complaint does not state when any of these complaints were made, to whom they were made, or how long after each complaint the allegedly retaliatory act took place. Similarly, the Complaint asserts in a conclusory fashion that Motta was disciplined and moved to less desirable assignments, but does not allege what constituted the alleged discipline, or how the new assignments were "less desirable" in a way that made them materially adverse or reasonably likely to deter a person from engaging in protected activity. As to Lennon, the Complaint asserts that she was terminated after complaining of discrimination, but does not provide the dates of either her complaint(s) or termination, or anything else to support the inference that the termination was retaliatory. *See, e.g.*, *Moore v. Verizon*, No. 13 Civ. 6467, 2016 WL 825001, at *15 (S.D.N.Y. Feb. 5, 2016) (lack of temporal proximity between complaints and termination "forestall any attempt to establish the necessary causal connection between the protected activity and the adverse employment action").

The Complaint's thin allegations of retaliation fail to "assert nonconclusory factual matter sufficient to nudge its claims across the line from conceivable to plausible." *Port Auth. of N.Y. & N.J.*, 768 F.3d at 254. GCS's motion to dismiss the retaliation claims in *Motta* is therefore granted.

## C. Breach of Contract

The *Motta* Complaint asserts a breach of contract claim premised on Plaintiffs' argument that they are third-party beneficiaries of the NYCTA/MTA's contract with GCS. According to the Complaint, GCS injured Plaintiffs by paying wages below those included in GCS's request for proposal. Because Plaintiffs' allegations concerning third-party beneficiary status are conclusory and unsupported by the Access-A-Ride contract's terms, the motion to dismiss Plaintiffs' contract claim is granted.

"Under New York law in order to recover as a third-party beneficiary of a contract, a claimant must establish that the parties to the contract intended to confer a benefit on the third party." *Subaru Distribs. Corp. v. Subaru of Am., Inc.*, 425 F.3d 119, 124 (2d Cir. 2005) (footnote omitted). "The contract must clearly evidence an intent by the parties to permit enforcement by the third party, such that the benefit to the third party was sufficiently immediate, rather than incidental . . . ." *Bayerische Landesbank, N.Y. Branch v. Aladdin Capital Mgmt. L.L.C.*, 692 F.3d 42, 52 (2d Cir. 2012) (internal quotation marks and citations omitted); *see also Fourth Ocean Putnam Corp. v. Interstate Wrecking Co.*, 485 N.E.2d 208, 212 (N.Y. 1985) ("[W]e have emphasized when upholding the third party's right to enforce the contract that no one other than the third party can recover if the promisor breaches the contract . . . or that the language of the contract otherwise clearly evidences an intent to permit enforcement by the third party . . . .").

The only allegation in the *Motta* Complaint relevant to the third-party beneficiary claim states that GCS's request for proposal "proposed an hourly rate of $14.64 for customer information agents and $14.11 to be paid to reservationists in year three . . . , with these amounts rising to $15.05 and $14.50, respectively, in the next year of the contract." The rates included in

9

the request for proposal, however, are not a term of the ultimate agreement between GCS and the NYCTA/MTA, and nothing in the contract evidences an intent by the counterparties to confer third-party beneficiary status on GCS employees. The contract between GCS and the NYCTA/MTA, which is integral to the *Motta* breach of contract claim, and which defendants supplied as an exhibit to their motion papers, contains nothing that would support Plaintiffs' assertion that any provision of it was intended for Plaintiffs' benefit, or otherwise conferred upon them third-party beneficiary status. *See Broder*, 418 F.3d at 196.

Finally, Plaintiffs cite two cases from New York state courts for the proposition that employees may sue as third-party beneficiaries under government contracts that include specific wage provisions. In *Cox v. NAP Construction Co.*, the New York Court of Appeals held that contractors' employees were third-party beneficiaries because the contractors had promised the N.Y.C. Housing Authority ("NYCHA") to pay their employees a prevailing wage, which was required for NYCHA to receive federal funding. 10 N.Y.3d 592, 602, 891 N.E.2d 271 (2008). Similarly, in *Lai Chan v. Chinese-American Planning Council Home Attendant Program, Inc.*, the court recognized plaintiffs as third-party beneficiaries where plaintiffs alleged that their employer entered into contracts with government agencies to pay wages as required by the Wage Parity Act and Fair Wages Act. 50 Misc. 3d 201, 218, 21 N.Y.S.3d 814 (N.Y. Sup. Ct. 2015). Both cases are readily distinguishable for two reasons. First, Plaintiffs do not allege -- and the Access-A-Ride contract does not contain -- any contractual provision where GCS promised the NYCTA/MTA to pay its employees a certain minimum wage. *See Seidel v. Hoffman Floor Covering Corp.*, No. 09 Civ. 4027, 2012 WL 3064153, at *5 (E.D.N.Y. July 26, 2012) ("Because there is no evidence that Defendants actually agreed to pay its workers a prevailing wage, Plaintiff cannot maintain a breach of contract action."). Second, Plaintiffs here -- unlike the

plaintiffs in *Cox* and *Lai Chan* -- cannot point to any state or federal requirement to pay a certain wage that would suggest that such a provision was either required or meant to be included by GCS or the NYCTA/MTA.

For the foregoing reasons, GCS's motion to dismiss the *Motta* Plaintiffs' breach of contract claim is granted.

### D.  Class Claims in *Joseph*

Finally, GCS argues that the class claims in the *Joseph* case should be "dismissed with prejudice because they fail to meet the Rule 23 standard." According to GCS, the class claims "are wholly individualized and not amenable to class representation." GCS's class arguments are procedurally premature, and its motion to dismiss class claims (or to strike class allegations pursuant to Rule 23(d)(1)(D)) is denied.

Federal Rule of Civil Procedure 23 directs courts to decide whether or not to certify a class "[a]t an early practicable time after a person sues or is sued as a class representative," and provides that they may "require that the pleadings be amended to eliminate allegations about representation of absent persons." Fed. R. Civ. P. 23(c)(1)(A), (d)(1)(D); *see also* Charles A. Wright & Arthur R. Miller, 7AA Fed. Prac. & Proc. Civ. § 1785.3 (3d ed.) ("The time at which the court finds it appropriate to make its class-action determination may vary with the circumstances of the particular case."). "'Motions to strike are generally looked upon with disfavor.'" *Chenensky v. N.Y. Life Ins. Co.*, No. 07 Civ. 11504, 2011 WL 1795305, at *1 (S.D.N.Y. Apr. 27, 2011) (quoting *Ironforge.com v. Paychex, Inc.*, 747 F. Supp. 2d 384, 404 (W.D.N.Y. 2010)). "A motion to strike class allegations is even more disfavored because it requires a reviewing court to preemptively terminate the class aspects of litigation . . . before plaintiffs are permitted to complete the discovery to which they would otherwise be entitled on

questions relevant to class certification." *Id.* (internal quotation marks and alterations omitted); *see also Kassman v. KPMG LLP*, 925 F. Supp. 2d 453, 462 (S.D.N.Y. 2013) (collecting cases). "[A] motion to strike class claims is considered premature if the issues raised are 'the same ones that would be decided in connection with determining the appropriateness of class certification under Rules 23(a) and 23(b).'" *Kassman*, 925 F. Supp. 2d at 464 (quoting *Rahman v. Smith & Wollensky Rest. Grp., Inc.*, No. 06 Civ. 6198, 2008 WL 161230, at *3 (S.D.N.Y. Jan. 16, 2008)).

GCS argues that the *Joseph* case's class claims cannot satisfy Rule 23's requirements for commonality, typicality, predominance and superiority. Because these are the same issues that would be raised later in litigation in a motion for class certification, GCS's motion is denied as premature.

### IV. CONCLUSION

For the foregoing reasons, the motion to dismiss is GRANTED as to the claims in the *Motta* action and DENIED as to the claims in the *Joseph* action. The Clerk of Court is directed close the motions at Dkt. Nos. 31 and 44 (15 Civ. 8555) and Dkt. Nos. 27 and 40 (15 Civ. 8892). As each of the claims in the *Motta* action is now dismissed, the Clerk of Court is directed to close Case No. 15 Civ. 8555.

SO ORDERED.

Dated: May 4, 2016
New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE